UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CRAYOLA PROPERTIES, INC.,

               Plaintiff,

     -against-

JETSON ELECTRIC BIKES LLC,

               Defendant.

**MEMORANDUM & ORDER**
**24-CV-7250 (NGG) (PK)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Crayola Properties, Inc. ("Crayola") brought this action against Defendant Jetson Electric Bikes LLC ("Jetson"), alleging claims for breach of contract and trademark infringement of its CRAYOLA® trademark (the "Mark") under the Lanham Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.*, and New York common law. (Compl. (Dkt. 1) at 1, 6-10.) When Jetson failed to appear, the Clerk of Court entered a certificate of default against Jetson on April 3, 2025. (Clerk's Entry of Default (Dkt. 14).) Crayola moved for default judgment against Jetson on April 25, 2025. (Crayola's Mot. for Default J. (Dkt. 16); *see also* Crayola's Mem. of L. (Dkt. 16-1).) On May 12, 2025, this court referred the motion to Magistrate Judge Peggy Kuo for a Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b)(1). (Order Referring Mot. dated 5/12/2025.) Because Crayola failed to file its certificate of service in conformity with Local Civil Rule 55.2(a)(3) it was directed, and filed, the certificate on May 20, 2025. (Order Directing Compliance dated 5/19/2025; Crayola's Certificate of Service (Dkt. 19).) Judge Kuo then requested that Plaintiff supplement its default judgment motion with contemporaneous time records describing the work performed by Crayola's counsel to assist the court in assessing its claim for attorneys' fees. (Order Requesting Time Records dated 1/20/2026.) Crayola responded

1

with a letter including time entries on January 23, 2026. (Crayola Time Records (Dkt. 20).)

Judge Kuo issued the annexed R&R on March 10, 2026, recommending that the court grant Crayola's motion for default judgment. (R&R (Dkt. 21) at 1.) Specifically, Judge Kuo recommended that Crayola's motion "be granted and that Jetson be ordered to pay Crayola the following: $19,332.04 in unpaid royalties; $3,562.98 in interest on unpaid royalties; $17,954.62 in attorneys' fees; $763.40 in costs; and post-judgment interest." (*Id.* at 18.) Judge Kuo also recommended "that the Court grant a permanent injunction prohibiting Jetson from using the Mark, including by advertising and selling the Licensed Products," and that the court order Jetson to "destroy all products, labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of Jetson bearing the Mark." (*Id.* at 19.)

No party has objected to Judge Kuo's R&R, and the time to do so has passed. *See* Fed. R. Civ. P. 72(b)(2). Therefore, the court reviews the R&R for clear error. *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 359 (2d Cir. 2025). Having found none, the court ADOPTS the R&R in full.

The court highlights its adoption of Judge Kuo's 40% reduction to Crayola's requested fees. (R&R at 17.) It notes the peculiar nature of Mr. Blaszkowski's submitted, and sworn, time records which start at 4.2 hours and increase to 9.2 hours, all with the same task description—his rate likewise increases by a dollar for each entry. (Crayola Time Records, at ECF p. 7.) The court cautions counsel to heed this reduction as an admonition for future cases, before this or any other court.

2

The court GRANTS Crayola's motion for default judgment and respectfully DIRECTS the Clerk of Court to enter default judgment against Jetson. The court permanently ENJOINS Jetson from using the Mark, including by advertising and selling the Licensed Products. Jetson is also DIRECTED to destroy all products, labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of Jetson bearing the Mark. The court awards Crayola $19,332.04 in unpaid royalties; $3,562.98 in interest on unpaid royalties; $17,954.62 in attorneys' fees; $763.40 in costs; and post-judgment interest from the date of entry of judgment until Jetson has satisfied the judgment.

SO ORDERED.

Dated:    Brooklyn, New York
          March 31, 2026

s/Nicholas G. Garaufis

NICHOLAS G. GARAUFIS
United States District Judge

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
                                  :

CRAYOLA PROPERTIES, INC.,         :

                                  :    **REPORT AND**
                       Plaintiff,    :    **RECOMMENDATION**

                     -against-       :    24-CV-7250 (NGG)(PK)

                                  :

JETSON ELECTRIC BIKES LLC,    :

                                  :

                     Defendant.  :
----------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

Plaintiff Crayola Properties, Inc. ("Crayola") brought this action against Defendant Jetson Electric Bikes LLC ("Jetson"), alleging claims for breach of contract and trademark infringement under the Lanham Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.* (the "Lanham Act"), and New York common law. (Compl. Dkt. 1). Crayola has moved for default judgment against Jetson. (Crayola's Motion for Default Judgment ("Motion"), Dkt. 16; *see also* Crayola's Memorandum of Law ("Mem."), Dkt. 16-1.) The Honorable Judge Nicholas G. Garaufis referred the Motion to me for a report and recommendation. For the reasons stated herein, I respectfully recommend that the Motion be granted as detailed below.

## BACKGROUND

### I.    Factual Background

The following facts are taken from the Complaint (Dkt. 1), the Declaration of Christopher Blaszkowski, Esq. ("Blaszkowski Decl.," Dkt. 16-2), and the Declaration of April Heeren, Esq. ("Heeren Decl.," Dkt. 16-13), and are accepted as true for purposes of the Motion. *See Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir. 2009).

Crayola is the owner of the CRAYOLA® trademark ("Mark"), which is used worldwide by Crayola and its affiliates and licensees on crayons, markers, colored pencils, and other products and services. (Compl. ¶ 9.) The Mark has been in use since 1903. (Compl. ¶ 9.) The Mark was

1

registered with the United States Patent and Trademark Office on August 28, 2001.  (Compl. ¶ 10; "Certificate of Registration," Ex. B to Mem., Dkt. 16-4.)

The Mark has been prominently and continuously used in Crayola's sales and marketing of virtually all product categories since the debut of its crayons, including on product packaging and hangtags, throughout the Crayola.com website and associated social media accounts, and in connection with the products themselves.  (Compl. ¶ 13.)  Crayola's widespread and continuous use of the Mark for over a century has made the Mark synonymous with the brand.  (Compl. ¶ 14.)

Jetson is a New York corporation that develops, manufactures, and distributes personal mobility devices, including electric bikes, electric scooters, and hoverboards.  (Compl. ¶¶ 3, 15.)

Crayola and Jetson entered into a license agreement effective January 1, 2023, for a one-year term ending December 31, 2023.  (Compl. ¶¶ 1, 16; "License Agreement," Ex. C to Blaszkowski Decl., Dkt. 16-5.)  Pursuant to the License Agreement, Crayola granted to Jetson "the non-exclusive right . . . to manufacture or have manufactured for it and to promote, advertise, distribute, and sell the Licensed Products" in certain territories.  (Compl. ¶ 17; License Agreement ¶ 2(a).)  The License Agreement defines "Licensed Products" as "3 Wheel Kick scooter" that incorporates the Mark.  (Compl. ¶ 18; License Agreement ¶ 1(b).)

In consideration of the License Agreement, Jetson was required, *inter alia*, to make royalty payments to Crayola, computed based on Jetson's reported sales of the Licensed Products. (Compl. ¶ 19; License Agreement ¶ 3(a).)  Specifically, royalties were to be "paid to Crayola within thirty (30) days of the end of each calendar quarter during the Term of th[e] Agreement . . . ." (License Agreement ¶ 3(a).)  Unpaid or late royalty payments triggered the accrual of interest at 12% per annum, compounded monthly.  (Compl. ¶ 21; License Agreement ¶ 3(e).)  In addition, the License Agreement required Jetson to pay Crayola's reasonable legal fees and costs associated with Crayola taking legal action to collect any unpaid royalty payments "if the legal action undertaken results in a determination that the payments were due."  (License Agreement ¶ 3(e); Compl. ¶ 22.)

Jetson sold the Licensed Products but, with respect to the third quarter of 2023, made only a partial payment of $5,000 and failed to remit the remaining balance of $19,332.04 due under its royalty statement, as required by the Licensing Agreement. (Compl. ¶¶ 23, 25, 29; Heeren Decl. ¶¶ 7-9.) For the fourth quarter of 2023, Jetson did not submit the required royalty statements or pay any royalties. (Compl. ¶¶ 24, 29.)

The License Agreement expired on December 31, 2023. (Compl. ¶¶ 26, 32; License Agreement ¶ 1(c).) Jetson sold the Licensed Products beyond the expiration date of the License Agreement without Crayola's permission. (Compl. ¶ 27.)

## II.    Procedural History

Crayola filed the Complaint on October 16, 2024. (Dkt. 1.)

Crayola effectuated service on Jetson by delivering copies of the Summons and Complaint to the New York Secretary of State on December 11, 2024. (Aff. of Service, Dkt. 7.) Jetson did not appear or otherwise answer the Complaint, and a certificate of default was entered against it on April 3, 2025. (Dkt. 14.)

Crayola moved for default judgment on April 25, 2025. (*See* Motion.)

## DISCUSSION

## I.    Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment. First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default. Fed. R. Civ. P. 55(a). The plaintiff may then move the court for an entry of default judgment. Fed. R. Civ. P. 55(b)(2). However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010).

The Court may "first assure itself that it has personal jurisdiction over the defendant." *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (cleaned up). The plaintiff must demonstrate proper service of the summons and complaint, *see Advanced Cap. Com. Grp., Inc.*

3

*v. Suarez*, No. 09-CV-5558 (DRH)(GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013), and establish compliance with the procedural requirements of Local Civil Rules 7.1 and 55.2.

In addition, the Court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel*, 577 F.3d at 84; *see also Mickalis*, 645 F.3d at 137. In considering a motion for default judgment, a court accepts the plaintiff's "factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor . . . ." *Finkel*, 577 F.3d at 84. However, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-6476 (ARR)(PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *R&R adopted,* 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020).

A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established . . . ." *Klideris v. Trattoria El Greco*, 10-CV-4288 (JBW) (CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sep. 23, 2011), *R&R adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

## II.    Jurisdiction and Default

### A.  Subject Matter Jurisdiction

This Court has federal question jurisdiction over Crayola's Lanham Act claims, *see* 28 U.S.C. §§ 1331, 1338(a), and supplemental jurisdiction over Crayola's breach of contract and common law trademark infringement claims under New York law, as they are "so related to" Crayola's federal claims that they "form[] part of the same case and controversy under Article III of the United States Constitution." 28 U.S.C. § 1367.

### B.  Service of Process

Crayola served Jetson by delivering copies of the Summons and Amended Complaint to the New York Secretary of State. (Aff. of Service, Dkt. 7.) Because Jetson is a New York

4

corporation, service on it via the New York Secretary of State was proper. *See* N.Y. Bus. Corp. L. § 306(b)(1); Fed. R. Civ. P. 4(h)(1)(B).

### C. Personal Jurisdiction

"Serving a summons . . . establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A)). New York State has general jurisdiction over corporations formed under its laws and operating within the state. *See Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *R&R adopted*, 2018 WL 4288625 (E.D.N.Y. Sep. 7, 2018). Because Jetson is a New York corporation and was properly served, the Court has personal jurisdiction over it.

### D. Jetson's Default

Jetson did not appear or otherwise respond to the Complaint, and has, therefore, defaulted.

## III.    Procedural Compliance with Local Civil Rules 7.1 and 55.2

As part of the Motion and in compliance with the Local Civil Rules, Crayola included a Notice of Motion (Dkt. 16), *see* Loc. Civ. Rule 7.1(a)(1); a Memorandum of Law (Dkt. 16-1), *see* Loc. Civ. Rule 7.1(a)(2); a declaration showing that the Clerk has entered default (Blaszkowski Decl.), *see* Loc. Civ. Rule 55.2(a)(1); a Proposed Default Judgment Order detailing the proposed judgment to be entered (Dkt. 16-16), *see* Loc. Civ. Rule 55.2(a)(2); proof of having mailed the motion papers to Jetson at its last known business address (Dkt. 19), *see* Loc. Civ. Rule 55.2(a)(3); and a statement of damages affirmed by someone with personal knowledge (Heeren Decl.), *see* Loc. Civ. Rule 55.2(c). Accordingly, compliance with the Local Civil Rules is satisfied.

## IV.    Liability

### A. Breach of Contract

Under New York law, "to state a claim of breach of contract, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of

defendant to perform; and (iv) damages." *Johnson v. Nextel Commc'ns*, 660 F.3d 131, 142 (2d Cir. 2011).

Here, Crayola and Jetson entered into the License Agreement dated January 1, 2023. (Compl. ¶¶ 1, 16; License Agreement.)  Crayola performed all its obligations under the License Agreement, including granting the license to Jetson to use the Mark.  (Compl. ¶¶ 17, 35.)  Jetson breached the License Agreement by failing to pay royalties owed.  (Compl. ¶¶ 19-20, 25, 39.) Crayola sustained damages as a result of Jetson's breach of the License Agreement in the form of unpaid royalties.  (Compl. ¶¶ 40-42.)

These allegations are sufficient to establish Jetson's liability for breach of contract under New York law.

### B. Trademark Infringement under the Lanham Act

"The Lanham Act prohibits the use in commerce, without consent, of any 'registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods,' in a way that is likely to cause confusion." *Time, Inc. v. Petersen Publ'g Co. L.L.C.*, 173 F.3d 113, 117 (2d Cir. 1999) (quoting 15 U.S.C. § 1114(1)(a)).

"To succeed in establishing liability for infringement under the Lanham Act, a plaintiff must prove: (1) that it owns a valid, protectible trademark; (2) that the defendant used the trademark in commerce and without consent; and (3) that there was a likelihood of consumer confusion." *C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223, 239 (S.D.N.Y. 2013) (citing *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 406 (2d Cir. 2005); 15 U.S.C. § 1114(1)).

### 1.  Ownership and Validity of the Mark

"A certificate of registration with the PTO is prima facie evidence that the mark is registered and valid (*i.e.,* protectable), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce." *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 224 (2d Cir. 2012) (cleaned up).

6

Crayola has submitted its certificate of registration for the Mark, thus showing the validity of the Mark and Crayola's ownership of it.  (*See* Certificate of Registration.)  *See* 15 U.S.C. § 1057(b); *J.T. Kalmar GmbH v. KLS Lighting Co.*, 17-CV-7505 (BMC), 2019 WL 3780091, at *2 (E.D.N.Y. Aug. 12, 2019).

### 2. Jetson's Use of the Mark in Commerce in Connection with Sales Without Crayola's Consent

Crayola has alleged that Jetson continued to sell and offer to sell the Licensed Product after the License Agreement's expiration date without Crayola's consent.  (Compl. ¶¶ 27, 32.) Accordingly, the Complaint adequately alleges that Jetson used the Mark in commerce, in connection with the sale or advertising of goods, without Crayola's consent.  *See Designer Greetings, Inc. v. Shah*, No. 14-CV-5936 (JS)(SIL), 2015 WL 13745443, at *3 (E.D.N.Y. Nov. 25, 2015) (finding sufficient plaintiff's allegation "that, upon termination of the licensing agreement, Defendants continued to use the Card$mart Trademarks in commerce without Plaintiff's consent or permission"), *R&R adopted*, 2016 WL 1029496 (E.D.N.Y. Mar. 15, 2016).

### 3. Likelihood of Confusion

"[L]ikelihood of confusion is established as a matter of law where an ex-licensee continues to use a mark after its license expires."  *Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 144 (S.D.N.Y. 2022); *see also L & L Wings, Inc. v. Marco-Destin, Inc.*, 676 F. Supp. 2d 179, 188 (S.D.N.Y. 2009).  "Confusion in such a situation is almost inevitable because consumers have already associated the formerly licensed infringer with the trademark owner."  *Capri Sun*, 595 F. Supp. 3d at 144 (citation omitted).

Because the Complaint sufficiently alleges that Jetson continues to sell products that bear the Mark beyond the License Agreement's expiration date, Crayola has established likelihood of confusion as a matter of law.  (Compl. ¶¶ 26-27, 49.)

Accordingly, Crayola's allegations are sufficient to establish Jetson's liability for trademark infringement under the Lanham Act § 32(1), 15 U.S.C. § 1114(1).

7

### C. Common Law Trademark Infringement under New York Law

"To prevail on its common law claim of trademark infringement, plaintiff need only present evidence sufficient to establish a violation of section 32(1) of the Lanham Act." *Philip Morris USA Inc. v. 5 Bros. Grocery Corp.*, No. 13-CV-2451 (DLI)(SMG), 2014 WL 3887515, at *4 (E.D.N.Y. Aug. 5, 2014) (cleaned up).

Because I find that Crayola's allegations are sufficient to establish a trademark infringement claim under the Lanham Act, I find that its allegations are also sufficient to establish the common law trademark infringement claim. *See Sub-Zero, Inc. v. Sub Zero NY Refrigeration & Appliances Servs., Inc.*, No. 13-CV-2548 (KMW)(JLC), 2014 WL 1303434, at *5 (S.D.N.Y. Apr. 1, 2014).

## V.    Relief

Crayola seeks (1) the entry of a permanent injunction barring Jetson from using the Mark, implying affiliation, causing consumer confusion, or otherwise unfairly competing with or misappropriating Crayola's goodwill, (2) an order directing Jetson to destroy all products and related items that bear the Mark, (3) breach-of-contract damages, plus contractual interest, (4) attorney's fees and costs, and (5) post-judgment interest.

### A. Permanent Injunction

The Lanham Act grants district courts the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116.

To obtain a permanent injunction, a plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57 (2010).

"In a trademark case, irreparable injury is established where there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Sub-Zero*, 2014 WL 1303434, at *6 (cleaned

8

up).  For the reasons discussed above, Crayola has sufficiently alleged facts showing a likelihood of consumer confusion and therefore has also established irreparable injury.

Legal remedies are inadequate to protect Crayola "[b]ecause the losses of reputation and goodwill and resulting loss of customers are not precisely quantifiable," *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 541 (S.D.N.Y. 2011), *aff'd*, 511 F. App'x 81 (2d Cir. 2013), and the Court "may infer from a defendant's default that it is willing to, or may continue its infringement." *Pearson Educ., Inc. v. Vergara,* 09-CV-6832, 2010 WL 3744033, at *4 (S.D.N.Y. Sept. 27, 2010).

The balance of hardships likewise favors Crayola.  The Mark has been in use since 1903, and it "represents the substantial goodwill created by Crayola through its use and sale of high-quality products bearing the [Mark]."  (Compl. ¶ 9.)  The likelihood of consumer confusion and potential loss of goodwill and reputation could cause significant harm to Crayola.  In contrast, by defaulting in this case, Jetson has failed to allege any hardship.  Moreover, "[i]n cases in which courts have found that infringement occurred, courts have essentially argued that the only hardship to the defendant from the injunction would be to prevent the defendant from engaging in further illegal activity." *Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp.*, 954 F. Supp. 2d 145, 163-64 (E.D.N.Y. 2013).  Thus, the balance of hardships weighs in favor of Crayola.

There is no indication that the public interest would be disserved by the permanent injunction requested by Crayola.  On the contrary, public interest would be served by the permanent injunction because "[t]he consuming public has a protectable interest in being free from confusion, deception, and mistake," and Crayola has sufficiently alleged facts showing likelihood of confusion.  *Sub-Zero*, 2014 WL 1303434, at *7; *see also Stark Carpet*, 954 F. Supp. 2d at 163-64 ("Anti-infringement injunctions serve the public interest by preventing consumer confusion and allowing a more efficient marketplace to operate by virtue of the availability to consumers of a clear identification of products, services and vendors.").  Accordingly, this factor weighs in favor of Crayola.

9

Because each element weighs in favor of Crayola, I respectfully recommend that the Court grant a permanent injunction prohibiting Jetson from using the Mark, including by advertising and selling the Licensed Products.

### B.  Destruction of Infringing Products and Items

"Under the Lanham Act, where a trademark violation has been established, a court may order infringing material be 'delivered up and destroyed.'" *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 639 (S.D.N.Y. 2018) (quoting 15 U.S.C. § 1118).

In light of Jetson's failure to appear in this action, I find that destruction of infringing articles under 15 U.S.C. § 1118 is appropriate.  *See Sub-Zero*, 2014 WL 1303434, at *7; *see also U.S.A. Famous Original Ray's Licensing Corp. v. Famous Ray's Pizza Buffet Inc.*, No. 12-CV-8753 (JGK)(GWG), 2013 WL 5363777, at *6 (S.D.N.Y. Sept. 26, 2013) (noting that "there is no reason to believe that a permanent injunction in this case would render a destruction order unnecessary in light of [defendant's] complete failure to participate in this litigation"), *R&R adopted*, 2013 WL 5664058 (S.D.N.Y. Oct. 17, 2013).

Accordingly, I respectfully recommend that the Court order Jetson to destroy all products, "labels, signs, prints, packages, wrappers, receptacles, and advertisements" in its possession that bear the Mark.  *See* 15 U.S.C. § 1118; *Fendi S.a.s. Di Paola Fendi E Sorelle v. Cosm. World, Ltd.*, 642 F. Supp. 1143, 1147 (S.D.N.Y. 1986) (holding that, under 15 U.S.C. § 1118, courts "may order the actual goods, as well as the infringing marks, destroyed"); *Jab Distributors, LLC v. Home Linen Collections*, No. 14-CV-6859 (MKB)(CLP), 2016 WL 1255729, at *4 (E.D.N.Y. Mar. 30, 2016).

### C.  Breach-of-Contract Damages

Notwithstanding Jetson's default, Crayola must prove its damages to a "reasonable certainty."  *Credit Lyonnais v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted).  To reach a conclusion as to damages, the Court relies on documentary evidence and detailed affidavits. *See Action S.A. v. Marc Rich & Co. Inc.,* 951 F.2d 504, 508 (2d Cir. 1991).

Here, in support of its request for breach-of-contract damages, Crayola submitted the License Agreement; correspondence with Jetson's representatives concerning the unpaid royalties ("Crayola-Jetson Correspondence," Ex. F to Blaszkowski Decl., Dkt. 16-8); a statement of damages affirmed by Senior Director of Licensing for Crayola (Heeren Decl.); and Jetson's royalty statement for the third quarter of 2023 ("Jetson's Royalty Statement," Ex. A to Heeren Decl., Dkt. 16-14).

### 1. Unpaid Royalty Payments

Crayola seeks $19,332.04 in unpaid royalties for the third quarter of 2023. (Mem. at 21.) According to Jetson's Royalty Statement, it owed Crayola $24,332.04 in royalties for the third quarter of 2023 pursuant to the License Agreement. (Heeren Decl. ¶ 6; Jetson's Royalty Statement.) Of that amount, Jetson submitted a partial payment of $5,000. (Heeren Decl. ¶ 7; Crayola-Jetson Correspondence.) Therefore, the balance of the royalty payment due to Crayola is $19,332.04. (Heeren Decl. ¶¶ 8-9; Crayola-Jetson Correspondence.) I find that these calculations are supported by the record. Accordingly, I respectfully recommend that Crayola be awarded **$19,332.04** in breach-of-contract damages.

### 2. Interest

Under the License Agreement, Crayola is entitled to receive interest on unpaid royalties at 12% per annum, compounded monthly. (Compl. ¶ 21; License Agreement ¶ 3(e).) Crayola contends that it is entitled to $3,793.41 in interest on the unpaid royalties for the third quarter of 2023 through March 30, 2025. (Mem. at 21.)

The License Agreement provides that royalties were to be "paid to Crayola *within thirty (30) days of* the end of each calendar quarter during the Term of th[e] Agreement . . . ." (License Agreement ¶ 3(a) (emphasis added).) Royalties for the third quarter of 2023 were due on October 30, 2023; therefore, interest began accruing from that date.[1] Calculating interest from October 30,

---

[1] Crayola requested $3,793.41 in interest, appearing to have calculated interest beginning in September 2023. (Mem. at 21.)

2023 through March 30, 2025, the interest due is $3,562.98.    Accordingly, I respectfully recommend that Crayola be awarded **$3,562.98** in interest on unpaid royalties.

### D. Attorneys' Fees and Costs

Crayola requests $29,924.37 in attorney's fees and $763.40 in costs.

### 1. Attorneys' Fees

#### a.    Entitlement to Attorneys' Fees

Under the American Rule, "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010).  Thus, each claim must ordinarily be supported by an independent fee-shifting basis.

Here, Crayola is entitled to attorneys' fees pursuant to the License Agreement, which states that Jetson will pay Crayola's reasonable legal fees and costs of the action to collect royalties and any other payments due to Crayola.  (License Agreement ¶ 3(e).)

The Lanham Act, however, entitles a prevailing party in a trademark infringement case to obtain attorneys' fees only in "exceptional cases."  15. U.S.C. § 1117(a).  Crayola argues that this case is "exceptional" by virtue of Jetson's default because it evinces bad faith and willfulness. (Mem. at 22-23.)

The Second Circuit has held that there exists "no presumption [under the Lanham Act] . . . that cases involving willful infringement are necessarily 'exceptional' . . . ." *4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 216 (2d Cir. 2019).  Rather, courts are to engage in a "case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* at 215 (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)).  Courts "may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Octane Fitness*, 572 U.S. at 555.  "In that 'case-by-case exercise,' courts may consider factors including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and

12

the need in particular circumstances to advance considerations of compensation and deterrence.'"

*4 Pillar*, 933 F.3d at 215 (quoting *Octane Fitness*, 572 U.S. at 554 n.6).

"Where a willfulness finding is based on a defendant's default, the same principle holds: attorneys' fees are not warranted unless additional aggravating factors render the case exceptional." *Lighting & Supplies, Inc. v. New Sunshine Energy Sols. Inc.*, No. 20-CV-2790 (FB)(VMS), 2023 WL 2815623, at \*6 (E.D.N.Y. Mar. 14, 2023), *R&R adopted*, 2023 WL 2674376 (E.D.N.Y. Mar. 29, 2023). In other words, "a defendant's default—standing alone—is not 'exceptional.'" *Antetokounmpo v. Costantino*, No. 21-CV-2198 (JMF)(JLC), 2021 WL 5916512, at \*7 (S.D.N.Y. Dec. 15, 2021) (collecting cases); *Travel Leaders Grp., LLC v. Corley*, No. 19-CV-1595 (GBD)(JLC), 2019 WL 6647319, at \*14 (S.D.N.Y. Dec. 5, 2019) (denying attorneys' fees under Lanham Act because "defaulting defendants could not have litigated unreasonably because they did not litigate at all"), *R&R adopted*, 2022 WL 950957 (S.D.N.Y. Mar. 30, 2022).[2]

Here, Jetson did not engage in any delay tactics or other litigation misconduct; it simply failed to appear. No additional circumstances exist that renders this case "exceptional" and warrants an award of attorneys' fees under the Lanham Act. "Considering the totality of

---

[2] "In recent default cases in which courts awarded attorneys' fees based on a finding that the cases were 'exceptional,' the plaintiffs demonstrated additional aggravating factors beyond the defendants' willfulness, such as a defendant litigating a case in an unreasonable way or in bad faith." *Lighting & Supplies*, 2023 WL 2815623, at \*8 (collecting cases). Some of the cases deemed exceptional involved defendants' disobeying court orders. *See Experience Hendrix, LLC v. Pitsicalis*, 2020 WL 3564485, at \*16 (S.D.N.Y. July 1, 2020) (deeming the case exceptional in light of, *inter alia*, "defaulting defendants' behavior during litigation, including disobeying court orders and refusing to participate in discovery"), *R&R adopted sub nom. Experience Hendrix, LLC v. Hendrix*, 2020 WL 4261818 (S.D.N.Y. July 24, 2020); *Aquavit Pharmaceuticals, Inc. v. U-Bio Med, Inc.*, No. 19-CV-3351 (VEC)(RWL), 2023 WL 2396511, at \*20 (S.D.N.Y. Feb. 17, 2023) ("Defendants have acted willfully; maliciously and repeatedly violated court orders imposing prohibitions on use of the AQUAGOLD Marks; and repeatedly failed to cure their contempt, all of which has unfolded over a period of years."). In other cases, the defaulting defendant continued infringing even after the court entered a permanent injunction. *See Holiday Park Drive, LLC v. Newist Corp.*, No. 23-CV-2623 (AMD)(JMW), 2024 WL 4802751, at \*6 (E.D.N.Y. Nov. 15, 2024). In still other cases, defaulting defendants wasted judicial resources through disrespectful and dilatory actions. *See JC Hosp. v. Hochberg*, No. 23-CV-2051 (LJL), 2025 WL 3124313, at \*21 (S.D.N.Y. Nov. 7, 2025) ("Where [defendant's] conduct frustrated the litigation process at every turn and displayed an utter lack of respect for the judicial process, an award of attorney's fees is merited." (cleaned up)); *Am. Exch. Time LLC v. Tissot S.A.*, No. 17-CV-4737 (VM), 2022 WL 17414348, at \*5 (S.D.N.Y. Dec. 5, 2022) ("Defendant's conduct has resulted in an enormous waste of the Court's time and resources, and has incurred substantial expense on Plaintiff.").

13

circumstances, this case strikes the Court as an ordinary trademark infringement case, and not the kind of 'exceptional' case contemplated in the Lanham Act and Supreme Court precedent." *Lighting & Supplies*, 2023 WL 2815623, at \*8.

Accordingly, Crayola is not entitled to attorneys' fees under the Lanham Act.

The time records submitted by Crayola's counsel do not clearly distinguish between time spent on the breach-of-contract claim and on the trademark infringement claims. (*See* "Time Records," Dkt. 20.) Therefore, rather than attempting to extract the hours worked on each claim, I review the request for attorneys' fees generally to determine whether it is reasonable for the breach-of-contract claim.

### b.    *Reasonableness of Attorneys' Fees*

"[T]o determine whether the number of hours spent by Plaintiff's counsel was reasonable, the Court must 'use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case.'" *Litkofsky v. P & L Acquisitions, LLC*, No. CV 15-5429 (DRH)(AKT), 2016 WL 7167955, at \*10 (E.D.N.Y. Aug. 19, 2016) (quoting *Fox Indus., Inc. v. Gurovich*, No. 03-CV-5166 (TCP)(WDW), 2005 WL 2305002, at \*2 (E.D.N.Y. Sept. 21, 2005)), *R&R adopted*, 2016 WL 7168069 (E.D.N.Y. Dec. 8, 2016).

The Second Circuit bases fee awards on the "presumptively reasonable fee." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009). Courts calculate the presumptively reasonable fee according to the "lodestar" method by "multiplying the number of hours reasonably billed . . . by the appropriate hourly rate." *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132 n.4 (2d Cir. 2008). Courts determine reasonable attorneys' fees based on several factors, including labor and skill required, the complexity of the issues, counsel's customary hourly rate, counsel's experience, and awards in similar cases. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 186 n.3 (2d Cir. 2008).

As for the hourly rates, courts apply "the forum rule," which states that "courts should generally use the hourly rates employed in the district in which the reviewing court sits." *Simmons*,

14

575 F.3d at 174 (quotations and citation omitted).  When adjusted for inflation, the forum rates in the Eastern District have recently been found to be $450-$650 for partners, $300-$450 for senior associates, $150-$300 for junior associates, and $100-$150 for paralegals.  *Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 244 (E.D.N.Y. 2025).

Crayola's counsel requests attorneys' fees in the amount of $29,924.37 based on the following hourly rates: $545-$580 for Partner Christopher Blaszkowski[3]; $590-$655 for Counsel Christopher Warren[4]; and $310-$355 for Associate Shayne Rasay.[5]  (Mem. at 21-23; Blaszkowski Decl. at 4.)

These hourly rates fall within the range of rates found reasonable in comparable cases for attorneys with similar experience.  *See, e.g.*, *Holiday Park Drive, LLC v. Newist Corp.*, No. 23-CV-2623 (AMD)(JMW), 2024 WL 4802751, at *8 (E.D.N.Y. Nov. 15, 2024) ("[I]n the intellectual property litigation arena, this District has found between $300 and $785 per hour appropriate for partners . . . and between $200 and $595 per hour for associates . . . .") (footnote omitted) (collecting cases); *see also JLM Couture, Inc. v. Gutman*, No. 20-CV-10575 (LTS)(SLC), 2022 WL 17832303, at *6 (S.D.N.Y. Dec. 21, 2022) ("Courts in this District have routinely found a fee in the $550 range to be reasonable for a partner with primary responsibility litigating a dispute with breach of contract and intellectual property elements, as is the case here.") (collecting cases).

As for the hours expended, district courts have broad discretion to assess the reasonableness of the time billed by counsel, which must be corroborated by contemporaneous time records that are "sufficiently detailed to determine the reasonableness of the hours claimed

---

[3] Mr. Blaszkowski graduated from the Drexel University Thomas Kline School of Law in 2009 and has been practicing as a litigator for 15 years; he is a registered patent attorney.  (Blaszkowski Decl. at 4.)

[4] Mr. Warren graduated from Florida Coastal School of Law in 2010 and has been practicing as a litigator for 15 years.  (Blaszkowski Decl. at 5.)

[5] Ms. Rasay graduated from Temple University Beasley School of Law in 2019 and has been practicing since then; she is a registered patent attorney.  (Blaszkowski Decl. at 5.).

for any given task." *Manti's Transp. v. Kenner*, No. 13-CV-6546 (SJF)(AYS), 2015 WL 1915004, at *10 (E.D.N.Y. Apr. 27, 2015).

"Where the documentation of hours is inadequate," or the time records include "hours that are excessive, redundant, or otherwise unnecessary," courts may reduce the number of hours for purposes of lodestar analysis. *See Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983). Courts may also make across-the-board percentage reductions where the time entries are too vague to sufficiently document the hours claimed, such as when "block-billing makes it difficult if not impossible for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided." *Linde v. Arab Bank, PLC*, 293 F.R.D. 138, 142 (E.D.N.Y. 2013); *see also Vista Outdoor Inc. v. Reeves Fam. Tr.*, No. 16-CV-5766, 2018 WL 3104631, at *7 (S.D.N.Y. May 24, 2018) (noting that block billing "is disfavored by courts because it has a tendency to obfuscate the amount of time expended on distinct tasks"). "The hours claimed may not pass muster if a disproportionate amount of time was billed by the more senior attorneys, compared to junior associates and paralegals." *Streamlight, Inc. v. Gindi*, No. 18-CV-987 (NG), 2019 WL 6733022, at *20 (E.D.N.Y. Oct. 1, 2019) (citation omitted), *R&R adopted*, 2019 WL 6726152 (E.D.N.Y. Dec. 11, 2019).

Courts are not required to "evaluate and rule on every [time] entry," particularly in "cases with voluminous fee applications." *See New York State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983).

Here, I find the hours requested by counsel for Crayola to be unreasonably high. First, the time records submitted by counsel contain many instances of block billing, or aggregating multiple tasks into one billing entry, that are not detailed enough to determine whether billing was reasonable. (*See* Time Records at 7 (reflecting block-billed entries dated Feb. 21, 26-28, and Mar. 19, 2025).)

Second, the majority of the work (61.60 hours, or 68.44%) was performed by senior professionals—Partner Christopher Blaszkowski and Counsel Christopher Warren—whereas

16

Associate Shayne Rasay expended significantly less time (28.10 hours, or 31.22%).[6]  *Gindi*, 2019 WL 6733022, at \*20 ("[N]o explanation is provided as to why two senior partners conducted the vast majority of the work" where "approximately 61 percent of the total work performed on the case [was billed by them].").

Third, the total number of hours counsel for Crayola billed in this matter—90.0 hours, including 41.3 hours spent on editing the Memorandum of Law—is disproportionate to the number of hours billed in a standard breach-of-license case resolved by default judgment.  (*See* Time Records.)  In breach-of-license cases in the default posture, courts have found comparably high hours unreasonable.  *See, e.g.*, *Century 21 Real Est. LLC v. Paramount Home Sales, Inc.*, No. 06-CV-2861 (FB)(JMA), 2007 WL 2403397, at \*6 (E.D.N.Y. Aug. 20, 2007) (finding unreasonable 93.76 hours spent on Lanham Act and breach-of-license claims given that, *inter alia*, "defendants are in default and all motions were undisputed," and applying 33% across-the-board reduction); *Curves Int'l, Inc. v. Negron*, No. CV-11-2986 (ADS)(GRB), 2012 WL 4490542, at \*6 (E.D.N.Y. Aug. 31, 2012) (in breach-of-license case, finding 92.7 hours excessive given, *inter alia*, the use of senior attorneys for work suitable for lower billers and that "the attorneys' fees application is riddled with inaccuracies, insufficiencies and inconsistencies," and reducing attorneys' fee award from plaintiff's requested amount of $25,747.50 to $15,000), *R&R adopted*, 2012 WL 4490553 (E.D.N.Y. Sept. 28, 2012).

Based on the foregoing issues that I have identified with the Time Records and in light of other courts' findings in comparable cases, I find a 40% across-the-board reduction to be appropriate.

Applying a 40% reduction to Crayola's requested fees of $29,924.37 yields $17,954.62.  Accordingly, I respectfully recommend that Crayola be awarded **$17,954.62** in attorneys' fees.

---

[6] 0.3 hours were billed by Jonah Perry, who appears to be a paralegal.  (*See* Time Records.)

### 2. Costs

Crayola seeks $763.40 in costs, comprised of $405 for the filing fee, $95.60 for service of process, $21 for certificate of good standing, $200 for admission pro hac vice, and $41.80 for mailing costs. (Blaszkowski Decl. ¶ 14; "Prior Time Records," Ex. I to Blaszkowski Decl., Dkt. 16-12.) "Costs relating to filing fees, process servers, postage, and photocopying are ordinarily recoverable." *Hernandez v. Delta Deli Market Inc.*, No. 18-CV-00375 (ARR)(RER), 2019 WL 643735, at *10 (E.D.N.Y. Feb. 12, 2019) (quoting *Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008)).

Accordingly, I respectfully recommend that Crayola be awarded **$763.40** in costs.

### E. Post-Judgment Interest under 28 U.S.C. § 1961(a)

Post-judgment interest is mandatory. *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004); *see* 28 U.S.C. § 1961(a) (post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court" and "shall be calculated from the date of the entry of the judgment at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding the date of judgment"). Accordingly, I recommend that Crayola be granted post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

### CONCLUSION

Based on the foregoing, I respectfully recommend that the Motion be granted and that Jetson be ordered to pay Crayola the following:

- **$19,332.04** in unpaid royalties;

- **$3,562.98** in interest on unpaid royalties;

- **$17,954.62** in attorneys' fees;

- **$763.40** in costs; and

- Post-judgment interest.

This results in a total award of $41,613.04, plus post-judgment interest. In addition, I recommend that the Court grant a permanent injunction prohibiting Jetson from using the Mark, including by advertising and selling the Licensed Products, and order Jetson to destroy all products, labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of Jetson bearing the Mark.

Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
         March 10, 2026

19